

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6439 | **DATE** | 7/27/2001 |
| **CASE TITLE** | Charles Jones vs. Motorola, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [12-1] is granted. This case is dismissed with prejudice.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 3 0 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 32 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | 01 JUL 27 PM 4:34 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES JONES,                )
                              )
       Plaintiff,             )
                              )   No. 00 C 6439
    v.                        )
                              )   Judge Ruben Castillo
MOTOROLA, INC.,               )
                              )
       Defendant.             )

DOCKETED
JUL 3 0 2001

## MEMORANDUM OPINION AND ORDER

Charles Jones sued Motorola, Inc., under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging that: (1) Motorola's failure to promote him was racially discriminatory; and (2) Motorola did not take any steps to remedy a racially hostile work environment. Motorola filed a motion for summary judgment, which we grant for the reasons stated below. (R. 12-1.)

## RELEVANT FACTS

In 1984, Motorola hired Charles Jones as a technician. Two years later, Jones became an installation engineer, a job grade of an E06.[1] Jones continued to receive promotions, and his supervisors, Bill Durham and Bill Densmore, promoted him to an E09 Group Leader in

---

[1] The grades and positions of Motorola's System Engineering organization are as follows:

      E06 Systems Engineer I
      E07 Systems Engineer II
      E08 Senior Systems Engineer
      E09 Group Leader
      E10 Section Manager
      E12 Engineering Manager

(R. 14, Def.'s App. of Evidentiary Materials, Ex. 25, Densmore Dep. at 6-7, 9-10.)

December 1994. He remained an E09 Group Leader until August 1999, when he resigned from Motorola to accept a job with Ameritech. Jones was never promoted to an E10 Section Manager position. His complaint of racial discrimination arises from the five-year period during which he was not promoted.

During the five years that Jones was an E09 Group Leader, three people in his department were promoted from E09 Group Leaders to E10 Section Managers. First, in mid-1995, after the department was reorganized by being split into two regions, Mary Bouska was promoted to an E10 position. Bouska received the promotion because her interest in sales and customer development matched the responsibilities of the new position. (R. 22, Pl.'s Resp. to Def.'s 56.1 Statement of Facts ¶ 30.) Furthermore, Bouska was pursuing an MBA. (*Id.*) The second promotion came in the spring of 1996 when an E10 Section Manager position opened up after Bill Durham (the previous Section Manager in the department) left for another organization. Bill Densmore was promoted to fill that position. Densmore had been an E09 since September 1993, more than a year longer than Jones. (*Id.* at ¶ 25.) After the promotion of Densmore, although there were no open Section Manager positions in Jones' department, Steve Rossbach was promoted in 1998 to an E10 position. "Rossbach was the most technically proficient engineer in the department." (R. 13, Def.'s 56.1 Statement of Facts ¶ 88; R. 22, Pl.'s Resp. to Def.'s 56.1 Statement of Facts ¶ 88.) Furthermore, Jones does not dispute that "Rossbach was an excellent engineer and was considered an expert in all technical areas." (*Id.* at ¶ 87.) Rossbach had been an E09 engineer since April 1994, roughly eight months longer than Jones. In addition, Rossbach threatened to leave in September 1998 if he was not promoted. (*Id.* at ¶ 88.) John Powers (the E12 engineer in Jones' department) decided to create an E10 position for Rossbach

because the department could not afford to lose his technical expertise. Many of the other E09 engineers in Jones' department, recognizing that there were not any managerial E10 positions available, either applied for a technical E10 position[2] or transferred to a different department.[3] Jones, however, neither requested a transfer to another department nor applied for a technical E10 promotion. (R. 22, Pl.'s Resp. to Def.'s 56.1 Statement of Facts ¶ 20.)

In May 1998, Densmore ranked Jones second to lowest among group leaders in his department. (R. 13, Def.'s 56.1 Statement of Facts ¶ 54.)[4] After this evaluation, Jones asked Densmore to conduct interviews regarding his performance. Peers, managers, project managers, and direct reports all complained about Jones' lack of leadership, responsiveness, and effective communication skills. In June 1998, Densmore was promoted to an E12 Engineering Manager position. He still retained his E10 duties, so he did not promote anybody at the time; however he informed Jones that in the third quarter of 1999, the department would be restructured and two E10 positions would open up. In August 1998, Densmore told Jones that there were several areas that he needed to improve upon in order to be promoted to an E10 Section Manager position, *e.g.* improving communication and leadership skills, taking ownership of projects,

---

[2] A technical E10 promotion did not require either the communication or leadership skills that a managerial E10 position required.

[3] For example, (1) Dave Lopez (Hispanic) was an E09 engineer until January 1999 when he left the department for an E10 position; (2) Vince DiMeo (Caucasian) was an E09 engineer until February 2000 when he requested a promotion to a technical position; (3) Ted Sweeny (Caucasian) was an E09 leader until December 1997 when he requested an E10 position in a different department; and (4) James Joyce (Caucasian) was an E09 engineer until October 1999 when he was promoted to an E10 position in a different department.

[4] In his response to Motorola's 56.1 Statement of Facts ¶ 54, Jones baldly states that this fact is disputed and provides citations to his deposition testimony. These citations only show that he was unaware of the rankings, and they do not refute his second to lowest ranking.

3

working effectively with customers, and attaining a broader scope of technical knowledge. (R. 22, Pl.'s Resp. to Def.'s 56.1 Statement of Facts ¶¶ 41-42; R. 13, Def.'s 56.1 Statement of Facts ¶¶ 41-42.) In addition, Densmore pointed out that Jones often was not responsive to peers and managers and did not return pages and messages for hours or days.[5] (*Id.* at ¶¶ 43, 44, 46, 47.) In January 1999, Densmore told Jones that as long as he continued to improve his performance, he would receive a promotion to one of the new E10 positions. In his annual evaluation in April 1999, Densmore told Jones that he had "met expectations" in 1998 and had begun to improve his job performance. (R. 22, Pl.'s Resp. to Def.'s 56.1 Statement of Facts ¶ 64.) Jones quit in August 1999, before the E10 positions were opened up. In October 1999 Densmore created two new E10 positions, as planned. Shortly thereafter, Steve Harrell and Tim Downing were both promoted to E10 Section Manager.

In addition to not being promoted, Jones complains of racial harassment that he suffered at work. First, Jones alleges that in the early 1990's, Motorola employee Dave Ausmus stated, "You really don't look like other senior engineers." (*Id.* at ¶ 98.) Although Jones found the comment to be discriminatory at the time, there is no evidence that he complained to anyone in management or Human Resources. Also in the early 1990's, Jones observed race-related "scribbling" on the inner stalls of the men's restroom walls. (*Id.* at ¶ 101.) Jones never complained about these marks, and they were removed a few days later. (*Id.*) Later, in the mid-1990's, Jones said that several Motorola employees talked to him about the Chicago Bulls, asked him if he played basketball, and asked him if he was going to pick up any "chicks." (*Id.* at

---

[5] Jones attempts to dispute this fact in his response to Motorola's 56.1 Statement of Facts, but he does not provide any citations to the record beyond his own allegations contained in his affidavit. (R. 22, Pl.'s Resp. to Def.'s 56.1 Statement of Facts ¶¶ 43, 44, 46, 47.)

4

¶ 102.) Jones felt that these employees were stereotyping him because he was African-American. Also in the mid-1990's, Jones alleges that he saw a confederate flag on top of the Motorola building. Although he did not complain about the confederate flag, it was immediately removed. Finally, in October 1998, an unknown person placed a decal of a confederate flag on Jones' nameplate. Jones left the decal on the nameplate because he wanted to see his co-workers' reactions to it. One Motorola employee, Ed Murphy, saw the decal and was offended by it. Murphy asked Jones why he kept the decal on his nameplate and why he did not take it down. Murphy then complained to Human Resources. Human Resources had the decal removed and talked to Jones about the incident. Although Motorola investigated the incident, the person who placed the flag decal on the nameplate was never discovered. As a result of these incidents, Jones complained that the work environment was racially hostile and that Motorola's response was not "reasonably likely to prevent future harassment." (R. 21, Resp. to Def.'s Mot. for Summ. J. at 15 (citing *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1029 (7th Cir. 1998).)

On September 7, 1999, Jones filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging racial harassment and discrimination. On July 2, 2000, Jones requested that the EEOC terminate its investigation and issue a notice of right to sue. The EEOC issued a right-to-sue letter on July 10 and mailed it to Jones' home via certified mail. The original letter was never picked up at the Post Office and, consequently, was returned to the EEOC. The EEOC resent the letter on August 2, 2000. Jones claims that he did not receive the resent letter, and instead, he picked up the letter himself, directly from the EEOC on August 2. On October 17, 2000, Jones filed a complaint in this Court.

## LEGAL STANDARD

A motion for summary judgment is granted where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000). The Court must view the evidence in a light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. *Crim v. Bd. Of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir. 1998). However, in considering a motion for summary judgment, we need not assume the truth of a nonmovant's conclusory allegations on faith or scour the record to unearth material factual disputes. *Carter v. Am. Oil Co.*, 139 F.3d 1158 (7th Cir. 1998). Ultimately, this Court must decide, "whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1573 (7th Cir. 1989).

## ANALYSIS

### I. Statute of Limitations for § 1981 Claims

The statute of limitations for a 42 U.S.C. § 1981 claim is generally borrowed from the forum state's personal injury laws because § 1981 does not contain one. The Illinois personal injury laws provide a two-year statute of limitations. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 (7th Cir. 2000). In 1990, however, Congress passed 28 U.S.C. § 1658, which provides a four-year statute of limitations for "an Act of Congress enacted after the date of enactment of this section." Some courts have interpreted § 1658 to provide a four-year statute of limitations for § 1981 actions. *Miller v. Fed. Express Corp.*, 56 F. Supp. 2d 955, 965 (W.D.

Tenn. 1999) (holding that § 1658 applies to the new substantive claims that are created by the Civil Rights Act of 1991); *Rodgers v. Apple S., Inc.*, 35 F. Supp. 2d 974, 977 (W.D. Ky. 1999) (Congress' intention through the Civil Rights Act of 1991 was to bring in all of the § 1981 claims under the four-year statute of limitations of § 1658). Other courts, however, have decided that § 1658 is not applicable to § 1981 claims. *Madison v. IBP, Inc.*, – F.3d –, 2001 WL 704432 (8th Cir. June 25, 2001) (state's two-year statute of limitations, and not § 1658's four-year statute of limitations, applies to employee's § 1981 claim); *Zubi v. AT&T Corp.*, 219 F.3d 220 (3d Cir. 2000) (same).

We have found no Seventh Circuit case that deals with this issue. In a recent Northern District of Illinois case, however, Judge Kennelly explained that "the four-year statute of limitations in § 1658 governs those claims created by the Civil Rights Act of 1991; the state personal injury statute of limitations, which in Illinois is two years, governs those claims created by the pre-1991 version of § 1981." *Adams v. R.R. Donnelley & Sons*, Nos. 98 C 4025 & 96 C 7717, 2001 WL 662206, at *6 (N.D. Ill. June 8, 2001).

In this case, while we agree with the reasoning of *Madison* and *Zubi*, we need not decide which statute of limitations to apply, as we would grant summary judgment in favor of Motorola regardless of which time period we use. Even if Jones could reach back four years for evidence to support his claims, he still would be unable to survive summary judgment.

## II. Title VII Time Requirements

### A. Continuing Violation

Under Title VII, charges are time-barred if they occur more than 300 days prior to the filing of an EEOC charge, unless the plaintiff can demonstrate a continuing violation. The

7

continuing violation doctrine is designed to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered . . . timely." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) (citation omitted). When it would be unreasonable to expect the plaintiff to perceive offensive conduct as Title VII harassment before the limitations period runs, or the earlier discrimination may only be recognized as actionable in light of "events that occurred later, within the period of the statute of limitations," the continuing violation doctrine applies. *Id.* The doctrine also may be used when, after an initial incident of discrimination, a plaintiff does not feel "sufficient distress to . . . mak[e] a federal case." *Id.*

On the other hand, the continuing violation doctrine has delineated limits. Where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that he was a victim of actionable harassment, he "cannot reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Id.*; *Minor v. Ivory Tech State Coll.*, 174 F.3d 855, 857 (7th Cir. 1999) (explaining that "as soon as [the harassment] is apparent, the 300-day period . . . begins to run, and if the complaint is filed within that period the plaintiff can reach back to the earlier acts in the series since she is not blameworthy for having failed to sue when they occurred").

In this case, Jones alleges his racial discrimination claim was a continuing violation, which occurred over the five years that he was not promoted to an E10 Section Manager position. Furthermore, Jones argues that the event that made him aware of the discrimination was Bill Densmore's decision to leave the E10 Section Manager position open following his own

8

promotion to an E12 Engineering Manager, an event which occurred within the 300 days prior to filing his EEOC charge. Motorola, however, contends that Jones was apprised of the alleged discrimination well before that incident, so he cannot reach back prior to the 300-day period and, thus, the charges should be time-barred. Indeed, Jones' own deposition testimony supports the fact that Jones had knowledge of the discrimination years before he filed his EEOC charge.[6] However, we need not base our grant of summary judgment to Motorola solely on this basis because, even if we were to assume that there was a continuing violation, as we explain below, Jones' discrimination claim still cannot survive summary judgment.

Jones also asserts a continuing violation on his harassment claim. The events that Jones alleges resulted in the racially hostile work environment, *i.e.* two comments by Motorola

---

[6] At his deposition, Jones testified as follows:

> Q: Did you consider the statement by Mr. Ausmus [in 1991] about you not looking like other senior engineers discriminatory?
> A: Yes.
> Q: Did you consider it to be discriminatory at the time that it was made?
> A: Yes.
> ***
> Q: [I]n the 1991 to 1996 time frame, did you consider . . . the lack of promotions to be discriminatory at the time?
> A: Yes.
> ***
> Q: I'm asking when you felt that you were discriminated –
> A: I felt it the whole time.
> Q: So all of 1999?
> A: Yes.
> Q: All of 1998?
> A: Yes.
> Q: All of 1997?
> A: Yes.
> Q: All of 1996?
> A: Yes.

(R. 14, Def.'s App. of Evidentiary Materials, Ex. 24, Pl.'s Dep. at 70-73, 77.)

employees, race-related scribbling, a confederate flag placed on top of the building, and a confederate flag decal stuck on Jones' nameplate, occurred over a nine-year period. These incidents are not related and do not demonstrate a coherent pattern. Consequently, the isolated events do not establish a continuing violation. *See Cervantes v. FCC Nat'l Bank*, No. 98 C 6730, 2000 WL 283973 (N.D. Ill. March 14, 2000) (holding that discrimination at the time of plaintiff's hiring and promotion are two distinct events and cannot establish a continuing violation). Therefore, because Jones cannot establish a continuing violation, only harassment that took place within 300 days of the filing of his EEOC charge will be considered in deciding whether Jones' harassment claim can survive summary judgment.

### B. EEOC 90-Day Time Limit

Title VII requires a plaintiff to file his lawsuit within ninety days after the receipt of an EEOC right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1). A lawsuit filed even one day past the ninety-day period will result in dismissal of the complaint, if the delay is not excusable. *Wilson v. Doctors Hosp. of Hyde Park*, 909 F. Supp. 580, 581 (N.D. Ill. 1996). In this case, the EEOC issued its first letter notifying Jones about his right to sue on July 10, 2000. Jones did not claim the letter, and it was returned to the EEOC. The EEOC resent the letter on August 2, 2000, which Motorola claims Jones received. Jones, however, states that he never received any notice of the certified letter from the Post Office, and, instead, he picked up the letter himself, directly from the EEOC on August 2, 2000. Jones' complaint was filed on October 17, 2000.

The Seventh Circuit has held that, in certain cases, the ninety-day period does not commence until the plaintiff or his attorney actually obtains physical possession of the right-to-sue letter issued by the EEOC. *See Houston v. Sidley & Austin*, 185 F.3d 837, 839 (7th Cir. 1999)

(citations omitted). This actual notice rule does not, however, apply to a plaintiff who fails to receive actual notice of her right to sue through her own fault. *See id.* Thus, where a right-to-sue letter is sent by certified mail, and the plaintiff fails to pick up the letter before the Post Office returns it to the EEOC, the actual notice rule does not apply unless the plaintiff produces facts explaining why he did not timely retrieve the letter. *Id.* at 840 n.5. Jones has not offered any such explanation. He merely states that he did not receive the letter until he went to the EEOC to pick it up. This is insufficient to confer upon Jones the benefits of the actual notice rule. *Luttrell v. O'Connor Chevrolet, Inc.*, No. 01 C 0979, 2001 WL 699896, at *3 (N.D. Ill. June 21, 2001) (plaintiff's statement that she did not receive the EEOC right-to-sue letter, without explanation as to why she did not timely retrieve her letter from the Post Office is insufficient to trigger the actual notice rule); *Watson v. BorgWarner Transmission Sys., Inc.*, No. 00 C 5543, 2001 WL 474312, at *2 (N.D. Ill. Apr. 26, 2001) (same).

In this case, the evidence shows that the Post Office tried to deliver the first right-to-sue letter by certified mail, and Jones has failed to demonstrate that his failure to retrieve the letter was not his fault. Thus, he cannot take advantage of the actual notice rule. Instead, he should be charged with constructive notice of his right to sue as of July 15, 2000, *i.e.* five days after the letter was issued by the EEOC. *Loyd v. Sullivan*, 882 F.2d 218 (7th Cir. 1989) (cited in *Watson*, 2001 WL 474312, at *3) (applying presumption that right-to-sue letter is received five days after it was issued). Because Jones did not file his complaint until October 17, 2000, ninety-four days later, the complaint is untimely. Although Jones' failure to timely file his complaint is, by itself, grounds to grant summary judgment for Motorola on Jones' Title VII claims, out of an abundance of caution, we will proceed to address the merits of his claims.

## III. Racial Discrimination Claim

There are two ways a plaintiff bringing a claim under Title VII or § 1981 can establish a *prima facie* case of racial discrimination: either by presenting direct evidence that the failure to promote was racially motivated or by employing the burden-shifting method in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000). *See Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir. 1996) (cited in *Benjamin v. Katten Muchin & Zavis*, No. 00-1370, 2001 WL 505967, at *7 (7th Cir. May 11, 2001) ("A claim under § 1981 includes the same elements and employs the same analysis and methods of proof as a Title VII claim."). Because Jones did not present direct evidence that he was discriminated against by Motorola's failure to promote him, we will use the burden-shifting approach to determine whether discrimination occurred. In order to establish a *prima facie* case of race discrimination, Jones must show that: (1) he belongs to a racial minority; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) the position was given to someone of a different race who had similar or lesser qualifications. *Malacara*, 224 F.3d at 729.

Once the *prima facie* case is established, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* (citation omitted). The burden of persuasion remains with the plaintiff at all times. *Id.* If the defendant articulates a nondiscriminatory reason, it has satisfied its burden and the plaintiff must then establish that the defendant's reasons were pretextual. Applying this formula, we find that no reasonable jury could find that race played a role in Motorola's failure to promote Jones.

12

In this case, Jones has failed to state a *prima facie* case of race discrimination. To do so, Jones must demonstrate, *inter alia*, that he was performing his job satisfactorily and that other, similarly situated employees not in the protected class were treated more favorable. First, in May 1998, Jones was ranked second to lowest among group leaders in his department. In addition, his supervisors made clear to him that he needed to improve in several areas in order to be qualified for a promotion. Although Jones did get satisfactory marks in his April 1999 performance review, he quit only a few months later, before the department was restructured and new E10 positions could be created.

Furthermore, Jones does not provide evidence that another employee, with similar qualifications and not in the protected class, was promoted ahead of him. Only a handful of people were promoted ahead of him, and none of them was similarly situated with Jones. For example, Rossbach was the "most technically proficient engineer" in the department, (R. 13, Def.'s 56.1 Statement of Facts ¶ 88), and had been an E09 engineer eight months longer than Jones. Others were promoted either to: (1) a technical E10 position, which Jones did not request, *e.g.* DiMeo; or (2) were promoted after they were transferred into a different department, which Jones also did not request, *e.g.* Lopez, Sweeny, and Joyce.

Even if Jones could state a *prima facie* case of race discrimination, Motorola has established a number of nondiscriminatory reasons for not promoting Jones. Specifically, Motorola contends that there was no business need to promote anybody, with the exception of Rossbach, to an E10 position during 1998-1999. (R. 30, Def.'s Reply at 7.) Furthermore, Jones was ranked second to lowest among group leaders in his department. In addition, Jones concedes that Densmore counseled him on his need to improve on a number of skills before he would be

13

qualified for a promotion to Section Manager. (R. 22, Pl.'s Resp. to Def.'s 56.1 Statement of Facts ¶¶ 42, 61.) Thus, because Jones cannot make out a *prima facie* case of race discrimination and because Motorola has articulated legitimate, nondiscriminatory reasons for its actions, which Jones cannot show were pretextual, we find that no reasonable jury could find that Motorola failed to promote Jones based on race. Thus, we grant summary judgment for Motorola on Jones' racial discrimination claim.

### IV. Hostile Work Environment Claim

Finally, the Court finds that Jones' claim of a racially hostile work environment cannot survive summary judgment. Racially hostile or abusive work environments are a violation of Title VII. *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 673 (7th Cir. 1993). In order to show that a hostile work environment is actionable, one must demonstrate that the harassment is so "severe or pervasive" that it "alter[s] the conditions of [the plaintiff's] employment and create[s] an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). To determine whether a plaintiff's work environment is sufficiently hostile to violate Title VII, a court may consider a variety of factors including "the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). A court must focus on the totality of the circumstances, and no one single factor is required. *Dey v. Colt Constr. & Dev.*, 28 F.3d 1446, 1453 (7th Cir. 1994). Nevertheless, the harassment must be "extreme." *Faragher*, 524 U.S. at 788. "It is not enough that a supervisor or coworkers fails to treat a[n] employee with sensitivity, tact, and delicacy,

14

uses coarse language, or is a boor. Such failures are too commonplace in today's America . . . to be classified as discriminatory." *Minor*, 174 F.3d at 858.

In this case, the only incident that occurred within 300 days of the filing of Jones' EEOC charge is the placement of the confederate flag decal on his nameplate, in October 1998. This unfortunate incident, however, falls short of demonstrating a racially hostile work environment. Jones, himself, did not take the decal down because he wanted the decal to "get more exposure from everyone, including [his] co-workers and management." (R. 14, Def.'s App. of Evidentiary Materials, Ex. 24, Pl.'s Dep. at 248.) Subsequently, when the incident was reported to Human Resources, it was immediately investigated, and the decal was removed. (R. 22, Pl.'s Resp. to Def.'s 56.1 Statement of Facts ¶¶ 106, 107.) Thus, after reviewing the scant evidence submitted by Jones on his hostile work environment claim, we cannot say, even drawing all reasonable inferences of fact in favor of Jones, that the alleged conduct was so severe and pervasive as to amount to the existence of an objectively hostile work environment. Consequently, because Jones has failed to present sufficient evidence to raise a genuine issue of material fact, this Court must grant Motorola's motion for summary judgment as to Jones' hostile work environment claim.

## CONCLUSION

For these reasons, we grant Defendant's motion for summary judgment. (R. 12-1.) The Clerk of the Court is instructed to enter final judgment, pursuant to Federal Rule of Civil Procedure 58, against Jones.

ENTERED:

_Ruben Castillo_
**Judge Ruben Castillo**
**United States District Court**

**Dated: July 27, 2001**